IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RENE DURAN, DANIEL KOLODZIEJSKI and )<br>CITY OF CHICAGO, )<br>)<br>Defendants. ) | No. 08 C 6314 |

## AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, by her attorneys, **DEUTSCHMAN & ASSOCIATES, P.C.**, and complaining of the Defendants, RENE DURAN, DANIEL KOLODZIEJSKI and CITY OF CHICAGO, a municipal corporation, states as follows:

### Jurisdiction

1. That on and prior to September 19, 2008, the Federal Civil Rights Act, 42 U.S.C. Sections 1983 et seq., 1985, 1986 and 1988; the Judicial Code, 28 U.S.C. Sections 1331, and 1343(a), the Constitution of the United States, including the Fourth Amendment and the Fourteenth Amendment, and supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 were in full force and in effect.

### Parties

2. That the Plaintiff's decedent, TYRONE DANDRIDGE, was at all times relevant herein, a citizen of the United States and of the State of Illinois and was a resident of the County of Cook and the City of Chicago.

3. That at all relevant times herein, the defendants, RENE DURAN and DANIEL KOLODZIEJSKI, were police officers working for the Chicago Police Department and were at all times acting in the scope of their employment and for the benefit of their employer, CITY OF CHICAGO.

4. That the Defendant, CITY OF CHICAGO, was at all times relevant herein, the employer of the duly appointed, qualified and acting police officers named above employed by Defendant, CITY OF CHICAGO, a municipal corporation. That said Defendant is herein sued in its official police capacity and was at all relevant times responsible for supervising, instructing, training, and developing and monitoring the policies, practices, operations and customs of the Chicago Police Department and its personnel.

### Facts Common to All Counts

5. That at all times material herein, the defendant, CITY OF CHICAGO, provided the two named defendant city police officers, with official badges and credentials which designated and described them as officers of the Defendant, CITY OF CHICAGO, a municipal corporation.

6. That the Defendant's police officers named above, engaged in the conduct complained of under color and pretense of the statutes, ordinances, regulations, customs and usages of the Defendant, CITY OF CHICAGO, a municipal corporation in their capacity as a CITY OF CHICAGO police officers.

7. That on or about the early morning hours of September 19, 2008, the Plaintiff's decedent, TYRONE DANDRIDGE, was lawfully present at his brother's residence at 145 North Bell in the defendant, CITY OF CHICAGO, County of Cook and State of Illinois.

8. That on or about September 19, 2008, while Plaintiff's decedent, TYRONE DANDRIDGE, was lawfully at said location, the Defendant, RENE DURAN, maliciously, and

2

unlawfully used undue and excessive force on the Plaintiff's decedent, TYRONE DANDRIDGE; to wit, the Defendants, RENE DURAN and DANIEL KOLODZIEJSKI, stepped into the doorway of the residence, saw the plaintiff's decedent and his brother on the couch where plaintiff's decedent was being held by his brother who was restraining his movement; the defendant, RENE DURAN, then stated "step back," drew his service revolver and fired a shot into the back of plaintiff's decedent, TYRONE DANDRIDGE, killing him.

9. At no time prior to being shot did the decedent TYRONE DANDRIDGE pose a threat to himself, his brother or to the defendant police officers.

10. Plaintiff's decedent had not committed any crime before, at the time of, or after the defendant police officers arrived at the residence of his brother, nor did the defendant police officers have probable cause or reasonable grounds to believe that the plaintiff decedent had committed a crime.

11. Defendant's employee police officer's conduct toward Plaintiff was outrageous, malicious, willful and wanton, and conducted with design to oppress, injure and kill the Plaintiff's decedent and deprive him of his constitutional rights.

12. The Defendant, CITY OF CHICAGO, by and through their agents, servants and/or employees, and each of the defendant officers has a duty to uphold the U.S. Constitution, the laws of the United States, and the laws and Constitution of the State of Illinois.

13. The CITY OF CHICAGO has a duty to properly train their officers to ensure that they are trained to uphold the U.S. Constitution, the laws of the United States, and the laws and Constitution of the State of Illinois, and to preserve the community's rights and well-being, including the rights and well-being of the Plaintiff's decedent herein.

14. The actions of the Defendant's police officer as described herein exhibits deliberate indifference to the rights of the Plaintiff's decedent and are of such an outrageous nature as to shock the conscience of any reasonable person.

15. The CITY OF CHICAGO has a history of failing to adequately train its officers in the use of excessive force and respect of constitutional rights, investigate claims of excessive force and constitutional rights, failing to adequately investigate same, failing to discipline its officers for instances of excessive force and violations of constitutional rights, and knowingly ignoring same or turning a blind eye to the same.

16. Defendant, CITY OF CHICAGO, is responsible for the aforesaid actions of its officers under its control due to its failure to properly train, discipline, investigate and/or supervise them.

17. That as a direct and proximate result of the foregoing wrongful acts the Plaintiff's decedent, TYRONE DANDRIDGE, was then and there injured both internally and externally; that he suffered severe injuries that resulted in his immediate death.

18. That the Plaintiff is entitled to his costs and reasonable attorney's fees incurred herein pursuant to <u>42 United States Code, Section 1988</u>.

### COUNT I
### Action Against City of Chicago Under the Federal Civil Rights Act

The Plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, by her attorneys, **DEUTSCHMAN & ASSOCIATES, P.C.**, and complaining of the Defendant, CITY OF CHICAGO, a municipal corporation, states as follows:

19. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 19.

4

20. At all relevant times the actions of the defendant's employees, alleged above, were done pursuant to the execution of one or more of the defendant's *de facto* policies, practices and/or customs of the CITY OF CHICAGO police department.

21. On and before September 19, 2008, it was one of defendant's *de facto* policies, practices and/or customs to use deadly force even where life was not threatened. This policy authorized the use of deadly force.

22. Defendant did not train its employees on how to properly use deadly force.

23. Defendant did not train its employees to identify what situations warranted the use of deadly force.

24. On and before September 19, 2008, the defendant CITY OF CHICAGO's policymakers knew or should have known that their police officers, had in the past, and would in the future be faced with situations similar to the circumstances and facts heretofore alleged wherein the police officers would improperly use deadly force despite the fact the plaintiff's decedent posed no immediate danger to himself, his brother, the police officers, or anyone else, and further, despite the fact the plaintiff's decedent had no weapon and had his back facing the police officers when fatally shot.

25. On and before September 19, 2008, the defendant, CITY OF CHICAGO's policymakers knew or should have known that their police officers, including RENE DURAN and DANIEL KOLODZIEJSKI, would follow defendant CITY OF CHICAGO's protocol, training, policies, custom and/or de facto policy and would improperly employ the use of deadly force without first identifying whether the situation placed any person, including the plaintiff's decedent, his brother or the officers in immediate danger. Despite this policy and knowledge, the defendant CITY OF CHICAGO deliberately chose not to change the policy or provide training to

its police officers regarding the use of excessive and deadly force where no immediate danger exists.

26. On and before September 19, 2008, Defendant, CITY OF CHICAGO, had the duty and responsibility to adequately train its police officers in the appropriate and reasonable use of force and applicable standards for entering a residence.

27. On and before September 19, 2008, the practice of CITY OF CHICAGO police officers improperly using excessive and deadly force on individuals in the field became an accepted custom and practice to the point of it becoming an unwritten or *de facto* policy throughout the CITY OF CHICAGO.

28. On and before September 19, 2008, the defendant, CITY OF CHICAGO, had *de facto* policies, practices, and customs which included the following:

   a. allowing police officers to use excessive force and in this case, deadly force, where the individual had not committed a crime and where the individual was not posing an immediate threat or danger to himself or anyone else, depriving the individuals of life and liberty as defined by the Fourth Amendment of the United States Constitution, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983;

   b. allowing the use of deadly force to unlawfully seize TYRONE DANDRIDGE and individuals like him without probable cause or provocation of life and liberty as defined by the Fourth Amendment of the United States Constitution, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983;

   c. the policymakers deliberately chose not to train, supervise, discipline, transfer, counsel and otherwise control its police officers engaged in the excessive use of force and other abuses, which directly resulted in the death of TYRONE DANDRIDGE.

   d. failing to adequately and/or properly train its police officers with respect to the constitutional limitations placed upon the use of force, including but not limited to the use of deadly force;

   e. failing to adequately and/or properly train its police officers with respect to identifying and assessing a scene prior to restraining an individual or shooting him;

    f.    failing to adequately and/or properly train its police officers with respect to the safe and proper way to restrain an individual without causing them great bodily harm and death;

    g.    failing to adequately and/or properly train its police officers with respect to the use of deadly force without first ascertaining whether an individual posed a risk of immediate danger to himself or others;

    h.    failing to adequately and/or properly train its police officers with respect to the necessity to intercede when a fellow officer appears ready to use deadly force when no immediate danger or threat exists.

29. In particular, defendant's employees were allowed to use excessive force and deadly force in the field on individuals when such force was not warranted. This policy was followed with the full knowledge that CITY OF CHICAGO police officers were certain to confront such persons as the plaintiff's decedent and excessive and deadly force would likely be used without adequate training. The defendant CITY OF CHICAGO's lack of training, supervision, policy, procedure, custom or practice in restraining individuals created a *de facto* policy of allowing the defendant's employees to use excessive and deadly force. The *de facto* policy constituted a widespread practice and was so well settled to establish a custom or usage with the force of law.

30. Defendant, CITY OF CHICAGO, policy makers were deliberately indifferent to the training policy it employed and its deficiencies.

31. As a direct and proximate cause of these policies and customs, TYRONE DANDRIDGE was injured, died and his constitutional protected rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, as applied by 42 U.S.C. Section 1983, were violated and the Defendant, CITY OF CHICAGO, is liable to the decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

WHEREFORE, the plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, deceased, demands substantial compensatory damages against Defendant, CITY OF CHICAGO, for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, as well as costs, attorneys fees, and punitive damages and whatever additional relief this Court deems equitable and just.

## COUNT II
### Action Against Rene Duran for Improper Use of Excessive Force Under the Federal Civil Rights Act

The Plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, by her attorneys, **DEUTSCHMAN & ASSOCIATES, P.C.**, and complaining of the Defendant, RENE DURAN, states as follows:

32. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 32.

33. As a direct and proximate cause result of one or more of the aforesaid willful and wanton acts of the Defendant, RENE DURAN, the plaintiff's decedent, TYRONE DANDRIDGE, was injured, died and his constitutional protected rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, as applied by 42 U.S.C. Section 1983, were violated and the defendant, RENE DURAN, is liable to the decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

WHEREFORE, the plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, deceased, demands substantial compensatory damages against Defendant, RENE DURAN, for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, as well as costs, attorneys fees, and punitive damages and whatever additional relief this Court deems equitable and just.

## COUNT III
### Action for Assault and Battery Against Rene Duran Under Illinois Law

The Plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, by her attorneys, **DEUTSCHMAN & ASSOCIATES, P.C.**, and complaining of the Defendant, RENE DURAN, states as follows:

34. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 34.

35. As a direct and proximate cause result of one or more of the aforesaid willful and wanton acts of the Defendant, RENE DURAN, the plaintiff's decedent, TYRONE DANDRIDGE, was injured and died, and the defendant, RENE DURAN, is liable to the decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

WHEREFORE, the plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, deceased, demands substantial compensatory damages against Defendant, RENE DURAN, for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, as well as costs, attorneys fees, and punitive damages and whatever additional relief this Court deems equitable and just.

## COUNT IV
### Action Against Daniel Kolodziejski for Failure to Intervene

The Plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, by her attorneys, **DEUTSCHMAN & ASSOCIATES, P.C.**, and complaining of the Defendant, DANIEL KOLODZIEJSKI, states as follows:

36. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 36.

37. That on September 19, 2008 in the moments prior to the shooting, the defendant, DANIEL KOLODZIEJSKI, failed to intervene when he knew or should have known that his

fellow officer, RENE DURAN, was about to use excessive and deadly force by firing his already drawn service revolver at the plaintiff's decedent, TYRONE DANDRIDGE.

38. That on September 19, 2008 in the moments prior to the shooting, the defendant, DANIEL KOLODZIEJSKI, failed to communicate to his fellow officer that it was wholly unnecessary to use excessive and deadly force when he knew or should have known that his fellow officer RENE DURAN, was about to use such excessive and deadly force by firing his already drawn service revolver at the plaintiff's decedent, TYRONE DANDRIDGE.

39. WHEREFORE, the plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, deceased, demands substantial compensatory damages against Defendant, DANIEL KOLODZIEJSKI, for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, as well as costs, attorneys fees, and punitive damages and whatever additional relief this Court deems equitable and just.

Respectfully submitted,
**DEUTSCHMAN & ASSOCIATES, P.C.**

/s/ Jeffrey S. Deutschman
Attorney for Plaintiff

JEFFREY S. DEUTSCHMAN
**DEUTSCHMAN & ASSOCIATES, P.C.**
77 West Washington Street
Suite 1525
Chicago, IL 60602
(312) 419-1600
ARDC # 6198271

10