IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA DAVIS, Special Administrator of the Estate of TYRONE DANDRIDGE, | ) | |
| Plaintiff, | ) | |
| | ) | NO.   08 C 6314 |
| vs. | ) | |
| | ) | JUDGE NORGLE |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS CITY OF CHICAGO,
RENE DURAN AND DANIEL KOLODZIEJSKI'S ANSWER, DEFENSES
AND JURY DEMAND TO PLAINTIFF'S AMENDED COMPLAINT**

Defendants City of Chicago, Rene Duran and Daniel Kolodziejski ("Defendants"), by one of their attorneys, Scott Jebson, Chief Assistant Corporation Counsel for the City of Chicago, hereby state for their Answer, Defenses and Jury Demand to Plaintiff's Amended Complaint as follows:

1. That on and prior to September 19, 2008, the Federal Civil Rights Act, 42 U.S.C Sections 1983 et seq., 1985, 1986 and 1988; the Judicial Code, 28 U.S.C. Sections 1331, and 1343(a), the Constitution of the United States, including the Fourth Amendment and the Fourteenth Amendment, and supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 were in full force and in effect.

**ANSWER:**

Defendants admit that this Court has jurisdiction over this matter, but deny that they committed any of the wrongful conduct complained of.

2. That the Plaintiff's decedent, TYRONE DANDRIDGE, was at all times relevant herein, a citizen of the United States and of the State of Illinois and was a resident of the County

of Cook and the City of Chicago.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained this paragraph, and therefore these allegations are deemed denied.

3. That at all relevant times herein, the defendants, RENE DURAN and DANIEL KOLODZIEJSKI, were police officers working for the Chicago Police Department and were at all times acting in the scope of their employment and for the benefit of their Employer, CITY OF CHICAGO.

**ANSWER:**

Defendants admit the allegations contained in this paragraph.

4. That the Defendant, CITY OF CHICAGO, was at all times relevant herein, the employer of the duly appointed, qualified and acting police officers named above employed by Defendant, CITY OF CHICAGO, a municipal corporation. That said Defendant is herein sued in its official police capacity and was at all relevant times responsible for supervising, instructing, training, and developing and monitoring the policies, practices, operations and customs of the Chicago Police Department and its personnel.

**ANSWER:**

Defendants admit that the City of Chicago was and is the employer of Rene Duran and Daniel Kolodziejski and that plaintiff is attempting to sue the City of Chicago in its official capacity. Because the remaining allegations are vague and ambiguous, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained this paragraph, and therefore these allegations are deemed denied.

5. That at all times material herein, the defendant, CITY OF CHICAGO, provided the two named defendant city police officers, with official badges and credentials which designated and described them as officers of the Defendant, CITY OF CHICAGO, a municipal corporation.

**ANSWER:**

Defendants admit the allegations contained in this paragraph.

6. That the Defendant's police officers named above, engaged in the conduct complained of under color and pretense of the statutes, ordinances, regulations, customs and usages of the Defendant, CITY OF CHICAGO, a municipal corporation in his capacity as a CITY OF CHICAGO police officer.

**ANSWER:**

Defendants deny that the defendant police officers engaged in the wrongful conduct complained of, and therefore, deny the allegations contained in this paragraph.

7. That on or about the early morning hours of September 19, 2008, the Plaintiff's decedent, TYRONE DANDRIDGE, was lawfully present at his brother's residence at 145 North Bell in the defendant, CITY OF CHICAGO, County of Cook and State of Illinois.

**ANSWER:**

If plaintiff is referring to the location where Tyrone Dandridge was when he was attacking his brother, on information and belief, Defendants deny the allegations contained in this paragraph.

8. That on or about September 19, 2008, while Plaintiff's decedent, TYRONE DANDRIDGE, was lawfully at said location, the Defendant RENE DURAN, maliciously, and

3

unlawfully used undue force on the Plaintiff's decedent, TYRONE DANDRIDGE; to wit, the Defendants, RENE DURAN AND DANIEL KOLODZIEJSKI, stepped into the doorway of the residence, saw the plaintiff's decedent and his brother on the couch where plaintiff's decedent was being held by his brother who was restraining his movement, the defendant, RENE DURAN, then stated "step back", drew his service revolver and fired a shot into the back of plaintiff's decedent, TYRONE DANDRIGE, killing him.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

9. At no time prior to being shot did the decedent TYRONE DANDRIDGE pose a threat to himself, his brother or to the defendant police officers.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

10. Plaintiff's decedent had not committed any crime before, at the time of, or after the defendant police officer arrived at the residence of his brother, nor did they defendant police officers have probable cause or reasonable grounds to believe that the plaintiff decedent had committed a crime.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

11. Defendant's employee police officer's conduct toward Plaintiff was outrages, malicious, willful and wanton, and conducted with design to oppress, injure and kill the

4

Plaintiff's decedent and deprive him of his constitutional rights.

**ANSWER:**

    Defendants deny the allegations contained in this paragraph.

    12.    The Defendant, CITY OF CHICAGO, by and through their agents, servants and/or employees, and each of the defendant officers has a duty to uphold the U.S. Constitution, the laws of the United States, and the laws and Constitution of the State of Illinois.

**ANSWER:**

    Defendants deny that plaintiff has accurately set forth the legal duty they owed, and therefore deny the allegations contained in this paragraph.

    13.    The CITY OF CHICAGO has a duty to properly train their officers to ensure that they are trained to uphold the U.S. Constitution, the laws of the United States, and the laws and Constitution of the State of Illinois, and to preserve the community's rights and well-being, including the rights and well-being of the Plaintiff's decedent herein.

**ANSWER:**

    Defendant City of Chicago denies that plaintiff has accurately set forth the legal duty it owed, and therefore denies the allegations contained in this paragraph. Defendant police officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained this paragraph, and therefore these allegations are deemed denied. Defendants affirmatively state that they deny that they committed any wrongdoing complained of.

14. The actions of the Defendant's police officer as described herein exhibits deliberate indifference to the rights of the Plaintiff's decedent and are of such an outrages nature as to shock the conscience of any reasonable person.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

15. The CITY OF CHICAGO has a history of failing to adequately train its officers in the use of excessive force and respect of constitutional rights, investigate claims of excessive force and constitutional rights, failing to adequately investigate same, failing to discipline its officers for instances of excessive force and violations of constitutional rights, and knowingly ignoring same or turning a blind eye to the same.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

16. Defendant, CITY OF CHICAGO, is responsible for the aforesaid actions of its officers under its control due to its failure to properly train, discipline, investigate and/or supervise them.

**ANSWER:**

Defendants deny the wrongful conduct complained of, and deny the allegations contained in this paragraph.

17. That as a direct and proximate result of the foregoing wrongful acts the Plaintiff's decedent, TYRONE DANDRIDGE, was then and there injured both internally and externally; that he suffered severe injuries that resulted in his immediate death.

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

18. That the Plaintiff is entitled to his costs and reasonable attorney's fees incurred herein pursuant to <u>42 United States Code, Section 1988.</u>

**ANSWER:**

Defendants deny the allegations contained in this paragraph.

## COUNT I
## Action Against City of Chicago Under the Federal Civil Rights Act

Because this Count of the Amended Complaint is not directed towards the defendant police officers, they make no response to this Count.

19. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 19.

**ANSWER:**

Defendant City of Chicago's answers to paragraphs 1 through 18 are incorporated herein by reference as its answer to paragraph 19.

20. At all relevant times the actions of the defendant's employees, alleged above, were done pursuant to the execution of one or more of the defendant's *de facto* policies, practices and/or customs of the CITY OF CHICAGO police department.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained and denies the allegations contained in this paragraph.

21. On and before September 19, 2008, it was one of defendant's *de facto policies*, practices and/or customs to use deadly force even where life was not threatened. This policy authorized the use of deadly force.

7

**ANSWER:**

Defendant City of Chicago denies that plaintiff has accurately set out the City of Chicago's policy relating to the use of deadly force and therefore, denies the allegations contained in this paragraph.

22. Defendant did not train its employees on how to properly use deadly force.

**ANSWER:**

Defendant City of Chicago denies the allegations contained in this paragraph.

23. Defendant did not train its employees to identify what situations warranted the use of deadly force.

**ANSWER:**

Defendant City of Chicago denies the allegations contained in this paragraph.

24. On and before September 19, 2008, the defendant CITY OF CHICAGO's policymakers knew or should have known that their police officers, had in the past, and would in the future be faced with situations similar to the circumstances and facts heretofore alleged wherein police officers would improperly use deadly force despite the fact that the plaintiff's decedent posed no immediate danger to himself, his brother, the police officers, or anyone else, and further, despite the fact the plaintiff's decedent had no weapon and had his back facing the police officers when fatally shot.

**ANSWER:**

Defendant City of Chicago denies that plaintiff's allegations in this paragraph accurately reflect what happened in this incident, deny that it or any of its employees committed any of the wrongful conduct complained of in this paragraph and deny the allegations contained in this

8

paragraph.

25. On and before September 19, 2008, the defendant, CITY OF CHICAGO's policymakers knew or should have known that their police officers, including RENE DURAN and DANIEL KOLODZIEJSKI, would follow defendant CITY OF CHICAGO's protocol, training, policies, custom and/or de factor policy and would improperly employ the use of deadly force without first identifying whether the situation placed any person, including the plaintiff's decedent, his brother or the officers in immediate danger. Despite this policy and knowledge, the defendant CITY OF CHICAGO deliberately chose not to change the policy or provide training to its police officers regarding the use of excessive and deadly force where no immediate danger exists.

**ANSWER:**

Defendant City of Chicago denies that plaintiff has accurately set out the City of Chicago's policy, training, "protocol" or alleged "custom" relating to the use of deadly force, deny that it or any of its employees committed any of the wrongful conduct complained of in this paragraph and deny the allegations contained in this paragraph.

26. On and before September 19, 2008, Defendant, CITY OF CHICAGO, had the duty and responsibility to adequately train its police officers in the appropriate and reasonable use of force and applicable standards for entering a residence.

**ANSWER:**

Defendant City of Chicago denies that plaintiff has accurately set forth the legal duty they owed, and therefore deny the allegations contained in this paragraph.

27. On or before September 19, 2008, the practice of CITY OF CHICAGO police

9

officers improperly using excessive and deadly force on individuals in the field because an excepted custom and practice to the point of becoming an written or *de facto* policy throughout the CITY OF CHICAGO.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

28. On and before September 19, 2008, the defendant, CITY OF CHICAGO, had de facto policies, practices, and customs which included the following:

    a. allowing police officers to use excessive force and in this case, deadly force, where the individual had not committed a crime and where the individual was not posing an immediate threat or danger to himself or anyone else, depriving the individuals of life and liberty as defined by the Fourth Amendment of the United States Constitution, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. sec. 1983;

    b. allowing the use of deadly force to unlawfully seize TYRONE DANDRIDGE and individuals like him without probable cause or provocation of life and liberty as defined by the Fourth Amendment of the United States Constitution , and the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. sec 1983;

    c. the policymakers deliberately chose not to train, supervise, discipline, transfer, counsel and otherwise control its police officers engaged in the excessive use of force and other abuses, which directly resulted in the death of TYRONE DANDRIDGE.

    d. failing to adequately and/or properly train its police officers with respect to the constitutional limitations placed upon the use of force, including but not limited to the use of deadly force;

    e. failing to adequately and/or properly train its police officers with respect to identifying and assessing a scene prior to restraining an individual or shooting him;

    f. failing to adequately and/or properly train its police officers with respect to

      the safe and proper way to restrain and individual without causing them great bodily harm and death;

  g.    failing to adequately and/or properly train its police officers with respect to the use of deadly force without first ascertaining whether an individual posed a risk of immediate danger to himself or others;

  h.    failing to adequately and/or properly train its police officers with respect to the necessity to intercede when a fellow officer appears ready to use deadly force when no immediate danger or threat exits.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

29.    In particular, defendant's employees were allowed to use excessive force and deadly force in the field on individuals when such force was not warranted. This policy was followed with the full knowledge that CITY OF CHICAGO police officers were certain to confront such persons as the plaintiff's decedent and excessive and deadly force would likely be used without adequate training. The defendant CITY OF CHICAGO's lack of training, supervision, policy, procedure, custom or practice in restraining individuals created a de facto policy of allowing the defendant's employees to use excessive and deadly force. The de facto policy constituted a widespread practice and was so well settled to establish a custom or usage with the force of law.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

30.    Defendant, CITY OF CHICAGO, policy makers were deliberately indifferent to

11

the training policy it employed and its deficiencies.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

31. As a direct and proximate cause of these policies and customs, TYRONE DANDRIDGE was injured, died and his constitutional protected rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, as applied by 42 U.S.C. Section 1983, were violated and the Defendant, CITY OF CHICAGO, is liable to the decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

**ANSWER:**

Defendant City of Chicago denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

WHEREFORE, Defendant City of Chicago prays that this Court enter judgment in its favor and against plaintiff and award it costs and any other relief this Court deems just.

## COUNT II

### Action Against Rene Duran for Improper Use of Excessive Force Under the Federal Civil Rights Act

Because this Count is not directed against Defendants City of Chicago or Defendant Kolodziejski, these defendants make no response to this count.

32. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 32.

**ANSWER:**

Defendant Duran's answers to paragraphs 1 through 18 are incorporated herein by

12

reference as their answer to paragraph 32.

33. As a direct and proximate cause result of one or more of the aforesaid willful and wanton acts of the Defendant, RENE DURAN, the plaintiff's decedent, TYRONE DANDRIDGE, was injured, died and his constitutional protected rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, as applied to 42 U.S.C. Section 1983, were violated and the defendant, RENE DURAN, is liable to the decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

**ANSWER:**

Defendant Duran denies the allegations contained in this paragraph.

WHEREFORE, Defendant Duran prays that this Court enter judgment in his favor and against plaintiff and award him costs and any other relief this Court deems just.

## COUNT III

### Action for Assault and Battery Against Rene Duran Under Illinois Law

Because this Count is not directed against Defendants City of Chicago or Defendant Kolodziejski, these defendants make no response to this count.

34. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 34.

**ANSWER:**

Defendant Duran's answers to paragraphs 1 through 18 are incorporated herein by reference as their answer to paragraph 34.

35. As a direct and proximate cause result of one or more of the aforesaid willful and wanton acts of the Defendant, RENE DURAN, the plaintiff's decedent, TYRONE DANDRIDGE, was injured and died, and the defendant, RENE DURAN, is liable to the

decedent and his estate for his injuries, pain, suffering, mental anguish, humiliation, and his death.

**ANSWER:**

Defendant Duran denies the allegations contained in this paragraph.

WHEREFORE, Defendant Duran prays that this Court enter judgment in his favor and against plaintiff and award him costs and any other relief this Court deems just.

## COUNT IV

### Action Against Daniel Kolodziejski for Failure to Intervene

Because this count is not directed against Defendants City of Chicago or Defendant Duran, these defendants make no response to this count.

36. Plaintiff re-alleges paragraphs 1 through 18 as her paragraph 36.

**ANSWER:**

Defendant Kolodzieski's answers to paragraphs 1 through 18 are incorporated herein by reference as their answer to paragraph 36.

37. That on September 19, 2008 in the moments prior to the shooting, the defendant, DANIEL KOLODZIEJSKI, failed to intervene when he knew or should have known that his fellow officer, RENE DURAN, was about to use excessive force and deadly force by firing his already drawn service revolver at the plaintiff's decedent, TYRONE DANDRIDGE.

**ANSWER:**

Defendant Kolodzieski's denies that excessive force was used, denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

38. That on September 19, 2008 in the moments prior to the shooting, the defendant,

14

DANIEL KOLODZIEJSKI, failed to communicate to his fellow officer that it was wholly unnecessary to use excessive and deadly force when he knew or should have known that his fellow officer RENE DURAN, was about to use such excessive and deadly force by firing his already drawn service revolver at the plaintiff's decedent, TYRONE DANDRIDGE.

**ANSWER:**

Defendant Kolodzieski's denies that excessive force was used, denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

39. WHEREFORE, the plaintiff, SYLVIA DAVIS, Special Administrator of the ESTATE OF TYRONE DANDRIDGE, deceased, demands substantial compensatory damages against Defendant, DANIEL KOLODZIEJSKI, for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, as well as costs, attorneys fees, and punitive damages and whatever additional relief this Court deems equitable and just.

**ANSWER:**

Defendant Kolodzieski's denies the wrongful conduct complained of and denies the allegations contained in this paragraph.

WHEREFORE, Defendant Kolodzieski prays this Court enter judgment in his favor and against plaintiff and award him costs and any other relief this Court deems just.

## **FEDERAL RULE 12(B)(6) DEFENSES**

Plaintiff attempts to bring her claim, in part, under the Fourteenth Amendment to the United States Constitution. However, the proper standard for analyzing plaintiff's claims is a Fourth Amendment standard and not a Fourteenth Amendment substantive due process standard. See, e.g., Graham v. Conner, 490 U.S. 386, 394 (1989). As such, plaintiff's claims under the

Fourteenth Amended should be dismissed.

Moreover, the City of Chicago cannot be held vicariously liable for plaintiff's section 1983 claims.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Defendants Duran and Kolodzieski are government officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in plaintiff's amended complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted defendant officers could have believed their actions to be lawful, in light of clearly established law and the information that defendants officers possessed. Defendant officers are therefore entitled to qualified immunity as to plaintiffs' federal claims.

### Second Affirmative Defense

As to the state law claims, at the time of the incident alleged in plaintiff's amended complaint, defendant officers were City employees, namely police officers, who were engaged in the execution and enforcement of the law. Under the Tort Immunity Act, an employee or agent of the City is not liable for his acts or omissions in the execution or enforcement of the law, unless such act or omission constitutes wilful and wanton conduct. 745 ILCS 10/2-202 (2002). The acts and/or omissions of the defendant officers were not willful and wanton. Therefore, defendant officers are not liable to plaintiff.

### Third Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant officers are not liable for any alleged injury caused by the act or omission of another person.  745 ILCS 10/2-204 (2002).

### Fourth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, defendant officers are not liable to plaintiff for any decision that involved the determination of policy and/or the exercise of discretion. 745 ILCS 10/2-201 (2002).

### Fifth Affirmative Defense

As to the state law claims, where Defendants may be liable in damages, the total amount of damages to which plaintiffs would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of negligent, willful and wanton, reckless and/or intentional conduct of the plaintiff's decedent which was the proximate cause of plaintiffs' injuries.

### Sixth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendants are not liable to plaintiff relating to any action of  providing or failure to provide police service. 745 ILCS 10/4-102 (2002).

### Seventh Affirmative Defense

Plaintiff is not entitled to recover attorneys fees for her state law claims.

**JURY DEMAND**

Defendants request trial by jury.

Respectfully submitted,


   /s/ Scott Jebson
SCOTT JEBSON
Chief Assistant Corporation Counsel

30 North LaSalle Street, Suite 1400
Chicago, Illinois 60602, 312/744-6959, Atty. No. 6225243

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have caused true and correct copies of the above and foregoing **DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT** to be sent via e-filing to all individuals who have filed an appearance in this case pursuant to Case Management/Electronic Case Files, on July 16, 2009, in accordance with the rules on electronic filing of documents.

                                                        /s/ Scott Jebson
                                                     SCOTT JEBSON
                                                     Chief Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1400
Chicago, Illinois 60602
(312) 744-6959