**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVIA DAVIS, Special Administrator of the Estate of TYRONE DANDRIDGE, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08-C-6314 |
| v. | ) ) | |
| RENE DURAN, DANIEL KOLODZIEJSKI, and CITY OF CHICAGO, | ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

### **INTRODUCTION AND BACKGROUND** [1]

The defendants have been sued under 42 U.S.C. §1983 in connection with Officer Duran's alleged use of excessive force against Tyrone Dandridge. In the early morning hours of September 19, 2008, Tyrone Dandridge was present at his brother Curtis' apartment, along with Tyrone's girlfriend (Charde Wiggins) and Curtis' wife (Eva). For reasons which are not important to the determination of the pending motions, Tyrone and Curtis were fighting with each other. They struggled and fell onto a glass table, which shattered into pieces. The two wrestled on the ground near the broken glass. At some point during the fight, Eva called the police and asked for immediate help. Ms. Wiggins asked Eva why she was calling the police. She then grabbed Eva's flip phone and broke it in two pieces. When she turned around, she observed the brothers wrestling on the couch. Curtis was apparently talking to Tyrone while holding him in a bear hug.

---

[1] Neither party has a statement of facts in their motions or responses. The facts set forth above are solely for background purposes and are drawn from summaries that appear in the briefs, the expert reports attached to the motions and from a motion hearing I held with the parties on January 31, 2011.

The struggle continued for about two minutes, at which point two police officers arrived at the apartment. After being present for about five to ten seconds one of the officers – Officer Duran – fired a shot into Tyrone's back from a distance of 5-10 feet. Following the shooting, Ms. Wiggins told the investigator that she heard Curtis say, "ouch!" while the two men were struggling on the couch, and that when the officers entered the apartment, Tyrone fell into the glass and Curtis fell onto the couch. The fall placed Tyrone with his back to the officers. Ms. Wiggins told the investigator that Eva had yelled, "he's stabbing him," causing the officer to fire his weapon. Ms. Wiggins later stated that she was not in her right frame of mind when she made statements to the investigator after having just witnessed the shooting. Ms. Wiggins now states that Eva yelled, "he's stabbing him" thirty seconds prior to when the officers entered and that this cry of alarm did not cause the officer to shoot.

At his deposition, Officer Duran stated that he was on the scene for approximately five seconds before firing his weapon, that he did not hear his partner say anything because he was giving his own verbal commands at the time, and that he did not see any evidence that Curtis had been stabbed or that either brother was bleeding. However, before he fired the shot, he observed Tyrone holding in his right hand an object that looked like a knife, was approximately 5 to 7 inches long and had a sharp tip. Officer Duran will testify that he saw Tyrone with his arm raised, making a stabbing motion with the sharp object in his hand.

Sylvia Davis, the Special Administrator of the Estate of Tyrone Dandridge, seeks to exclude testimony of the defendants' expert witnesses, Dr. James O'Donnell and Dr. Richard Goldberg.

## ANALYSIS

### A.
### The Motion To Bar The Testimony Of Dr. O'Donnell

The plaintiff has moved to exclude testimony from the defendants' pharmacology expert, Dr. James O'Donnell. Dr. O'Donnell's report concludes that "Mr. Tyrone Dandridge was experiencing the toxic effects of alcohol and was impaired by alcohol when he fought with his brother and disobeyed the Police order to stop stabbing Curtis. The BAC of 0.07g/dL (71mg%) is associated with impairments to the behavior, judgment, and risk taking. The 0.07 g/dL represents the alcohol equivalent of ~4 12 ounce beers." (Report of Dr. O'Donnell, Pls. Ex. A at 5-6). As a basis for this opinion, Dr. O'Donnell cites, among other things, a large scale review of the experimental literature dealing with the effects of alcohol on cognitive function and skills such as reaction time, tracking, concentrated attention, divided attention, performance, information processing capabilities, visual function, perception, and psychomotor performance. (*See id.* at 6).

The objection to Dr. O'Donnell's testimony is that this evidence would not be helpful to the jury because Tyrone's alleged prior alcohol consumption is unrelated to the issue of whether Officer Duran's use of force was reasonable. (*See* Plaintiffs' Motion ¶ 4). We begin with basic principles governing the concept of relevancy under Rule 401, Federal Rules of Evidence, and the principles that govern admissibility of expert testimony under Rule 702, Federal Rule of Evidence. *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 607 (7th Cir. 2006).

# 1.
# Rule 401

Congress carefully designed the Federal Rules of Evidence to be expansive and inclusionary. *See Tome v. United States,* 513 U.S. 150 (1995); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993); 2 Weinstein's Federal Evidence, 4.04.20[3] (McLaughlin ed.2010). Thus, all relevant evidence is admissible, except as otherwise provided by the Rules of Evidence, the Constitution of the United States, or an Act of Congress. Rule 402. "Relevant evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401.

Consistent with the overall design of the Federal Rules of Evidence and the plain language of Rule 401, the federal courts are unanimous in holding that the definition of relevant is expansive and inclusive, *Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 387-388 (2008); *Daubert,* 509 U.S. at 587, and that the standard for admissibility is very low. *United States v. Needham,* 377 Fed.Appx. 84, 85-86, 2010 WL 1932386, 1 (2nd Cir. 2010); *United States v. Jordan,* 485 F.3d 1214, 1218 (10th Cir. 2007); *United States v. Murzyn,* 631 F.2d 525, 529 (7th Cir.1980); *United States v. Curtis,* 568 F.2d 643, 645 (9th Cir. 1978). The question is not whether the evidence has great probative weight, but whether it has any, and whether it in some degree advances the inquiry. *Thompson v. City of Chicago,* 472 F.3d 444, 453 (7th Cir. 2006). As Dean McCormick has aptly phrased it, to be relevant, evidence need only be a brick, not a wall. *See also Huddleston v. United States,* 485 U.S. 681, 691 (1988)("'[I]ndividual pieces of evidence insufficient in themselves to prove a point may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.'").

# 2.
# Rule 702

Judge Posner has lamented that all too often, experts are "'the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face that cannot now be proved by some so-called experts.'" *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,* 797 F.2d 370, 382 (7th Cir. 1986). Thus, courts are not allowed to take... on faith" whatever a paid expert claims, *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997), even if the expert possesses truly distinguished credentials. *Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 319 (7th Cir. 1996). Rather, the Supreme Court has made clear that federal trial judges have an independent obligation – a gatekeeping or screening function – to insure that proffered scientific evidence rests on a reliable foundation and is relevant to the task at hand. *Id.* at 589, 597.[2] The insistence on reliability helps to ensure the integrity of the judicial process, *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir. 1989), and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1094 (7th Cir. 1994).

---

[2] While discussing several factors which "bear upon the [reliability] inquiry," the Court emphasized that the inquiry is "a flexible one," and that it was "not presum[ing] to set out a definitive checklist or test." The focus is not on the expert's conclusions, but on the underlying methodology. *Id.* at 593-595. To be admissible, scientific evidence must supported by "appropriate validation." *Id.* at 590. They were: (1) whether a theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation. Although rejecting "general acceptance" as the exclusive test for admissibility, the Court noted that it could be an additional factor that might bear on reliability. 509 U.S. at 593-94.

*Daubert* concluded with a reaffirmation of the adversary system, "which is fundamental to Anglo-American jurisprudence," *United States v. O'Neill,* 437 F.3d 654, 660 (7th Cir. 2006), and the capability of juries to understand scientific evidence and weigh the credibility of the competing experts, notwithstanding their contradictory conclusions and "dogmatic assertions." *Railroad Commission of Texas v. Rowan & Nichols Oil Co.,* 310 U.S. 573, 583 (1940). The rejection of expert testimony is the exception rather than the rule, *Spearman Industries, Inc. v. St. Paul Fire & Marine Insurance Co.,* 128 F.Supp.2d 1148, 1150 (N.D.Ill. 2001), and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 Advisory Committee's Note. Vigorous cross examination, presentation of contrary evidence and careful jury instructions, *Daubert* stressed, are the traditional and appropriate means of attacking shaky but admissible evidence. 509 U.S. at 596. *Accord Walker v. Soo Line R. Co.,* 208 F.3d 581, 587 (7th Cir. 2000); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718-719 (7th Cir. 2000).[3]

Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." That is, it must be "helpful" to the trier of fact. *Lawson v. Trowbridge*, 153 F.3d 368, 375 (7th Cir. 1998). Expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person. *See United States v. Allen,* 390 F.3d 944, 949-950 (7th Cir. 2004); *United States v. Mansoori,* 304 F.3d 635, 653-654 (7th Cir. 2002); *United States v. Young,* 316 F.3d 649, 656-659

---

[3]The flexibility of the inquiry envisioned by Rule 702, the illustrative nature of the Daubert factors, and the considerable leeway a trial judge must have in deciding whether expert testimony is reliable, were dominant themes of Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999). There, the Court held that the basic gatekeeping obligation created in Daubert applies equally to testimony based on technical and other specialized knowledge, *id.* at 141, 147-49, and it recognized that there are many different kinds of experts and many different kinds of expertise. *Id*. at 150.

(7th Cir. 2002). Consistent with the overall inclusionary design of the Federal Rules of Evidence, "the rule on expert testimony [is] notably liberal...." *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 298 (7th Cir. 1990). Absent strong factors favoring exclusion, "[d]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011). *See also* 3 J. Weinstein and M. Burger, Weinstein's Evidence, ¶ 702[02] (1996).

Like all other evidence, expert testimony must be relevant to be admissible. *Daubert*, 509 U.S. at 91. If it does not relate to any issue in the case, it is "not relevant and, ergo, non-helpful." *Id.;* 3 Weinstein & Berger ¶ 702[02], p. 702–18); *United States v. Gallardo*, 797 F.3d 727, 733 (7th Cir. 2007) (expert testimony must be "factually linked to the case in order to meet Rule 702's 'helpfulness' requirement").

The plaintiff does not challenge Dr. O'Donnell's qualifications or the basis upon which he formed his opinion. The only contested issue is whether his testimony will be helpful to the jury. As argued by the plaintiff, the question is one of relevancy. In excessive force cases, evidence of what the officer perceived prior to his encounter with the plaintiff (or his representative) is relevant to the reasonableness of the force employed. From this principle, the plaintiff reasons that what Officer Duran did not know – here, the decedent's alcohol consumption – is inadmissible, and since Dr. O'Donnell's opinion deals with impairment through alcohol consumption, his testimony would be irrelevant, not helpful to the jury, and thus inadmissible. (Plaintiff's Reply ¶ 2-3).

The argument misperceives the purpose for which the evidence is offered and puts out of view the breadth of the concept of relevancy under Rule 401. There is a significant factual dispute as to what Officer Duran observed after he arrived at the apartment. The

officer stated that when he arrived, he observed two men fighting. Before firing his weapon, he said he saw Tyrone holding a sharp, "knife-like" object in his hand. The question is whether Tyrone's alcohol consumption could have affected his judgment, thereby "tend[ing] to make it more probable that the plaintiff acted as the defendant contend[s] he did or that plaintiff otherwise conducted himself in such a manner as to place [Officer Duran] reasonably in fear" of serious and immediate danger to himself or to the person over whom the defendant was standing. *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979)(admitting evidence of alcohol consumption). In the language of Rule 401, evidence of impairment would have a "tendency to make the existence of [a] fact that is of consequence to the determination of the litigation more probable... than it would be without the evidence."

Evidence of alcohol or drug consumption is often admitted in excessive force cases on this theory and notwithstanding the officer's lack of knowledge about that consumption. *See e.g., Turner v. White,* 980 F.2d 1180, 1182 (8th Cir. 1992)(alcohol consumption admissible because it tended to make more probable that the plaintiff acted as the police claimed); *Saladino*, 609 F.2d at 1214 (same); *Palmquist, v. Selvik*, 111 F.3d1332, 1341-42 (7th Cir. 1997)(although excluded by the trial judge, evidence that plaintiff was arrested the night before his encounter with the officer who shot him for driving under the influence and marijuana possession "could have [been] allowed," because it would have tended to make more probable that the plaintiff acted as the police claimed); *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979)(evidence that the plaintiff was drunk was admissible because it "tend[ed] to make it more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted

himself in such a manner as to place the defendant reasonably in fear of his life"); *Smith v. Hunt*, 2011 WL 9737, at *2 (N.D. Ill. 2011)(evidence of the plaintiff's heroin-related impairment was relevant to show how the plaintiff interacted with the defendant officers and therefore the reasonableness of the officers' use of force); *More v. City of Braidwood*, 2010 WL 3547964, at *3 (N.D. Ill. 2010)(evidence that the plaintiff was intoxicated at the time of the incident at issue was "relevant to the officers' state of mind and the excessive force inquiry"); *Harris v. Clark,* 2009 WL 1683233, 2 (E.D.Wis. 2009)("Whether plaintiff was under the influence of drugs or alcohol at that time is highly relevant to assessing the totality of the circumstances surrounding Clark's use of force. An intoxicated suspect might be more likely to use violence, and thus whether plaintiff was intoxicated is relevant to assessing Clark's claim that plaintiff tried to punch him.").

Cases decided in the context of Rule 404(b) are informative. For example, in *Bowden v. McKenna*, 600 F.2d 282 (1st Cir.), *cert. denied,* 444 U.S. 899 (1979), the defendants were charged with having wrongfully killed the plaintiff's decedent during an attempted arrest. The court of appeals affirmed the trial court's admission of evidence that the decedent committed a prior robbery to show his motive to have shot at the officers, thereby tending to support their claim of self-defense. *See also Hernandez v. Cepeda*, 860 F.2d 260(7th Cir. 1988)(in suit alleging excessive force, evidence of outstanding arrest warrants for various offenses admissible to show plaintiff's motive to have resisted arrest); *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009)(numerous prior bad acts of the plaintiff admitted to support the defendant's theory of "suicide by cop.");[4] *Mendoza v. Gates*, 19 Fed.Appx. 514 (9th Cir. 2001) (in 1983 case

---
[4] *But see Palmquist v. Selvik*, 111 F.3d 1332, 1341 (7th Cir. 1997)("Ultimately, the evidence of Palmquist's desire to commit "suicide by police" does not tend to make the existence of any fact

(continued...)

where plaintiff's son killed by police, evidence plaintiff was on probation admissible to show motive to flee from police other than, for example, the motive to run from the gun Olsen was pointing at Jose Mendoza, as asserted by the Mendozas).

Despite the Federal Rules of Evidence's inclusionary and liberal thrust, relevant evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403. (Emphasis supplied). It is not enough to say that evidence is prejudicial. All evidence is prejudicial; that is why it is used. *Old Chief v. United States,* 519 U.S. 172, 193 (1997); *United States v. Duran,* 407 F.3d 828, 835 (7th Cir.2005). *See* Ronald Allen & Richard B. Kuhns, An Analytical Approach To Evidence 104-06 (1989). To be excludable under Rule 403, the evidence must be *unfairly* prejudicial and its probative significance must be *substantially* outweighed by the danger of that prejudice.

Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented. *United States v. Conner*, 583 F.3d 1011, 1025 (7th Cir. 2009). As the cases discussed above show, *supra* at 8-10, there is nothing *unfairly* prejudicial about Dr. O'Donnell's opinion. Moreover, I am confident in the parties' ability to craft effective, cautionary instructions and the jury's ability to follow them. "Juries are not leaves swayed by every breath." *United States v. Garsson,* 291 F. 646, 649 (S.D.N.Y.1923) (L.Hand, J.). Everyday, in courts across the country, juries are exposed to relevant evidence from experts and non-expert witnesses alike, having varying degrees of prejudicial implications. The law, quite properly, presumes that juries have the

---

[4](...continued)
material to the "objective reasonableness" test more or less probable.").

10

capacity not to be over-awed by the evidence and to follow appropriate instructions from the court. *Richardson v. Marsh,* 481 U.S. 200, 206 (1987); *United States v. Jakobetz*, 955 F.2d 786, 797 (2nd Cir. 1992)("We agree with both Professor McCormick and Judge Weinstein. Although scientific and statistical evidence may seem complicated, we do not think that a jury will be so dazzled or swayed as to ignore evidence suggesting that an experiment was improperly conducted or that testing procedures have not been established."); *United States v. Linwood,* 142 F.3d 418, 426 (7th Cir.1998). Indeed, the jury's ability to follow instructions and intelligently assess evidence is the very premise on which the jury system and the Federal Rules of Evidence rest. They presuppose a level of discernment that the plaintiff's argument incorrectly assumes they do not possess.[5]

**4.**

Finally, the plaintiff argues that Dr. O'Donnell's characterization of Tyrone's "impairment" is inadmissible because it fails to provide evidence of "actual intoxication." (Plaintiff's Motion ¶ 5). In support of this contention, the plaintiff cites *Flores v. Nissen*, 213 F.Supp.2d 871 (N.D. Ill. 2002) for the proposition that "evidence of consumption of potentially impairing substances is not admissible in the absence of actual intoxication." *Id.* at 875. The plaintiff claims that Dr. O'Donnell's report "deliberately stops short of

---

[5] A few examples will suffice. Rule 105 provides for limited admissibility and assumes the ability of the jury to follow instructions limiting the purpose for which the evidence can be used. Rule 404 prohibits other act evidence to prove propensity but not when offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 407 prohibits the use of subsequent remedial measures to prove negligence or liability but not when offered for some other relevant purpose. The same is true with Rule 408, which, in essence, prohibits evidence of settlement offers when offered to prove liability or invalidity of a claim but not when offered for some other relevant purpose such as to prove bias or prejudice, negating a contention of undue delay, etc. Rules 410 and 411 are further instances where it is assumed that jurors can make fine distinctions between evidence which is inadmissible for certain purposes but admissible if relevant purposes can be demonstrated. The evidence to which the defendants object does not remotely approach the capacity to confuse or to distract that the Federal Rules of Evidence permits so long as independent relevance can be shown.

11

opining to intoxication," and that "impairment" is iinsufficient to qualify for admissibility. (Plainitff's Reply at ¶ 4). Apart from the fact that district court opinions are not binding precedent, *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009); *LM Insurance. Corp. v. Spaulding Enter. Inc.,* 533 F.3d 542, 553 (7th Cir.2008), the argument overstates the holding in *Flores*.

In *Flores*, an employee brought suit against his co-worker for injuries suffered as a passenger in a traffic accident that occurred when the co-worker ran a red light and collided with another vehicle. 213 F.Supp.2d at 872. The plaintiff alleged that the co-worker was intoxicated at the time of the collision, and sought to introduce evidence that the co-worker had ingested prescription medication on the morning of the accident. The court held – and the plaintiff cites as authority here – that evidence of the co-worker's prior consumption of a potentially impairing substance, by itself, was inadmissible without evidence of "actual intoxication." *Id.* at 875.

The trouble with the plaintiff's reading of *Flores* is that it ignores the procedural posture of the case and the explicit limitations of the holding. And it does so despite the repeated admonitions of the Supreme Court and the Seventh Circuit against the hyper-literal parsing of and preoccupation with words excised from the informing context of the opinion. *See United States v. Apfelbaum,* 445 U.S. 115, 120 n.6 (1980); *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658, 696 (1978); *Penry v. Lynaugh,* 492 U.S. 302, 358(1989) (Scalia, J., concurring and dissenting in part) ("One must read cases, however, not in a vacuum, but in light of their facts...."). "[I]t is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth,* 442 F.3d 1018 (7th Cir. 2006). *See*

also *Wisehart v. Davis,* 408 F.3d 321, 326 (7th Cir. 2005); *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,* 414 F.3d 700, 705 (7th Cir. 2005); *McCready v. Jesse White,* 417 F.3d 700, 702–703 (7th Cir. 2005).

Properly read, it is clear that *Flores* did not purport to establish "intoxication" as the standard for admissibility of evidence, *semper ubique et. ab omnibus*. To the contrary, the court's statement that a showing of actual intoxication was necessary, was required by Illinois law which governed since jurisdiction was based upon the diversity of citizenship, and Illinois law "requir[ed] a party to demonstrate actual impairment." 213 F.Supp at 875. The instant case is not a diversity case, is not controlled by Illinois law, and *Flores* is thus irrelevant. More applicable cases have approved non-expert testimony that a civil rights plaintiff was "high" or "drunk," even though there was no proof of actual intoxication. *Palmquist*, 111 F.3d at 1342.

**B.**
**The Motion To Bar The Testimony Of Dr. Goldberg**

The plaintiff also seeks to bar the testimony of Dr. Richard Goldberg, an emergency medicine physician. Among other things, Dr. Goldberg's report contains the following opinions:

(1) "…that Curtis Dandridge's wounds are consistent with stab wounds as documented in the medical records and as depicted in the color photographs provided"; and

(2) "…that Tyrone Dandridge would have become unconscious and died very soon after sustaining the gun shot wound to his torso and more likely than not died with minimal conscious pain or suffering" (*see* Report of Dr. Goldberg, Pls. Ex. A at 5).

For essentially the same reasons that are raised in the motion to bar Dr. O'Donnell's testimony, the plaintiff contends that Dr. Goldberg's opinion regarding

13

Curtis' wounds should be excluded. (*Plaintiff's Motion* ¶ 4). Since Officer Duran did not know whether Curtis had been stabbed when he fired his weapon, the plaintiff argues, the claimed stabbing "has no relevance to his decision to shoot," and evidence suggesting that Curtis had stab wounds would, therefore, be inadmissible under Rule 702. (*Id.*).

Although the officer was unaware at the time of the occurrence that Curtis had been stabbed or was bleeding, evidence of that fact is nonetheless relevant to Officer Duran's version of events, which is that he saw Tyrone with his arm raised, holding a sharp object in his hand and making a stabbing motion. (Defendants' Response at 2). And Curtis admitted that he told the responding officers that Tyrone was trying to stab him before Officer Duran fired his weapon. (*Id.*). Thus, evidence that Curtis had already been stabbed – and that his wounds were consistent with being stabbed with a shard of glass – tends to make it more probable that Officer Duran did in fact observe Tyrone raising his arm and making a stabbing motion with a sharp object in his hand, as he claimed.

Dr. Goldberg's opinion will assist the jury in determining whether or not Tyrone was in fact attempting to stab Curtis at the time he was shot as Officer Duran contends. Surely, if there was no evidence of stab wounds, the plaintiff would be arguing for admissibility of that fact as casting doubt on Officer Duran's story. Of course, Dr. Goldberg's opinion is not conclusive of anything, and the plaintiff is free to present contrary evidence and argue at trial that Tyrone never stabbed his brother and that he was not holding a shard of glass in his hand at the time of the occurrence. But the jury is entitled to hear the evidence and to make its own judgment.

The plaintiff alternatively seeks to exclude the evidence under Rule 403 as unfairly prejudicial and having a tendency to encourage the jury to decide issues of the case on improper and emotional bases. (Plaintiff's Reply ¶ 4). But, like Dr. O'Donnell's opinion regarding Tyrone's alcohol consumption, the evidence is plainly relevant and not unfairly prejudicial. In any event, I am satisfied that its helpfulness to the jury substantially outweighs its prejudicial effect.

The plaintiff's next series of objections relate to Dr. Goldberg's opinion regarding the duration of any conscious pain and suffering that Tyrone may have experienced following the shooting. First, it is contended that Dr. Goldberg's opinion should be barred for "simply re-stat[ing] the findings of others concerning blood in the chest cavity and traumatic arrest" without providing an "analysis or description of any methodology used to arrive at the conclusion that Tyrone Dandridge experienced no conscious pain and suffering." (Plaintiff's Motion ¶ 7; *see also* Plaintiff's Reply ¶ 5). Dr. Goldberg's report states that the findings are based on the post-mortem report, which indicated that there was greater than two liters of blood in Tyrone's left pleural chest cavity, and also on the Chicago Fire Department EMS pre-hospital run sheet, which "documents full traumatic arrest without any vital signs upon paramedic arrival." (Report of Dr. Goldberg, Pls. Ex. A, at 2, 5).

Dr. Goldberg is a board certified emergency physician, who, following his review of the facts and medical reports relating to Tyrone's injury, applied his training and experience in emergency medicine in forming an opinion as to Tyrone's conscious pain and suffering, in light of his injuries. This analysis, which consists of more than merely parroting the other reports, is within the expertise of a specialist in emergency medicine.

At least at this juncture, it cannot be said that Rule 703, Federal Rules of Evidence, would preclude Dr. Goldberg's reliance on the reports, and the plaintiff apparently does not contend to the contrary.[6] While the sources of an expert opinion need not, themselves, be admissible in evidence, Rule 703 requires that they must be reliable and of the type reasonably relied on by experts in the field. *Price v. Thurmer*, _F.3d_, 2011 WL 1458694, *6 (7th Cir. 2011). Hospital records and autopsy reports qualify. *See Dura Automotive Systems of Indiana, inc. v. CTS Corp.*, 285 F.3d 609, 620 (7th Cir. 2002); *Schulz v. Celotex Corp.*, 942 F.2d 204, 209 (3rd Cir. 1991); *Rogovich v. Schriro*, 2008 WL 2757362, *6 (D.Ariz. 2008). And, if it can be shown that the reports on which Dr. Goldberg relied were, themselves, admissible under an exception to the hearsay rule under, for example, Rule 803(6) or Rule 803(8), there would not be an issue under Rule 703.

The plaintiff next contends that Dr. Goldberg's opinion is vague because it states non-specifically that Tyrone would have died "very soon" after sustaining the gunshot wound, and it characterizes any pain and suffering he may have experienced as "minimal." (Plaintiff's Motion ¶ 8). Aside from the single, unamplified assertion that Dr. Goldberg's language is vague and might have different meanings to different people, the argument is otherwise undeveloped and cites no supporting authority that would warrant barring his testimony or that requires that a medical expert must predict a specific amount of time for the duration between when the victim was shot and when he would have died. Nor does the plaintiff offer an alternative for the opinion's use of the term "minimal" when describing Tyrone's pain and suffering. This kind of terse and conclusory analysis

---

[6] Rule 703 provides, in pertinent part, that "the facts or data... upon which an expert bases an opinion or inference... if of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject... need not be admissible in evidence in order for the opinion or inference to be admitted."

is not sufficient. *Cf. Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel" and we have warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

*Daubert* emphasized that vigorous cross examination and the presentation of contrary evidence are the anodyne for admissible expert testimony, not an overly restrictive exclusion of evidence that passes muster under Rules 401 and 702. *Daubert*, 509 U.S. at 59; *Flowers v. Ownes*, __F.R.D.__, 2011 WL 1547142, 6 (N.D.Ill. 2011). At bottom, the plaintiff's objections go to the weight and not the admissibility of the testimony. *Cf. Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 n.8 (7th Cir. 2010); *Mihailovich v. Laatsch*, 359 F.3d 892, 913 (7th Cir. 2004). The terminology used by Dr. Goldberg will be familiar to the jury, and the plaintiff will be free to cross-examine him about particulars at trial.

The plaintiff's final objection is that Dr. Goldberg's opinion that Tyrone would have died quickly after being shot contradicts the testimony of Tyrone's girlfriend, Charde Wiggins, that Tyrone was conscious after being shot and "attempted to speak" and "moved a little bit" and thus impliedly opines on Ms. Wiggins' credibility. (Plaintiff's Motion ¶ 9). The argument is frivolous. Of course, an expert may not opine on the credibility of another witness. *See Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). But Dr. Goldberg's opinion does not mention Ms. Wiggins or her credibility. His report simply opines on the medical facts that are at issue in the case. That the testimony, if credited, would contradict Ms. Wiggins' testimony is analytically

inconsequential. If the plaintiff's argument wee accepted, no expert – indeed no witness of any kind – could testify to facts that contradicted those of his opponent's witnesses, for that would be an implied commentary on that witness' credibility. Of course, the prohibition would run both ways which would mean that no witnesses could ever testify about anything except things that were not at issue. How silly.

## CONCLUSION

The Plaintiff's Motion to Bar Opinions of Dr. James O'Donnell [#68] is DENIED. Plaintiff's Motion to Bar Opinions of Dr. Richard Goldberg [#69] is also DENIED.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/11/11