**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SYLVIA DAVIS, Special Administrator<br>of the Estate of TYRONE DANDRIDGE,<br><br>Plaintiff,<br><br>v.<br><br>RENE DURAN, DANIEL<br>KOLODZIEJSKI, and CITY OF<br>CHICAGO,<br>Defendants. | Case No. 08-C-6314<br><br>Judge Norgle<br><br>Magistrate Judge Cole |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION AND BACKGROUND

On September 19, 2008, Tyrone Dandridge and his brother, Curtis, were engaged in a physical altercation in the living room of Curtis' apartment. As they struggled, a glass table was shattered leaving shards of glass strewn about the floor. Sometime during the fight, Curtis' girlfriend, Ivelise Caro, telephoned the police for help. Officers Rene Duran and Daniel Koloziejski were the first to arrive at the scene. Upon entering the apartment, Officer Duran ordered the two to let each other go. As Tyrone stood up, the officer said he observed Tyrone holding a piece of glass in his hand which he believed to be a weapon, and that he saw Tyrone raising his hand over his head in a stabbing motion toward Curtis. Believing Tyrone was attempting to stab Curtis, Officer Duran fired one shot into Tyrone's back, fatally wounding him. The Special Administrator of Tyrone's estate sued the defendants under 42 U.S.C. § 1983, alleging, among other things, that Tyrone was neither stabbing nor about to stab Curtis, and that the officer therefore used excessive force against Tyrone.

On May 10, 2011, I denied the plaintiff's motion to bar certain expert testimony to be offered by two of the defendants' expert witnesses. *Davis v. Duran*, _ F.R.D._, 2011 WL 1792690 (N.D. Ill. 2011).[1]  The defendants now have moved to bar testimony from one of the plaintiff's expert witnesses, Dennis Waller, a police practices specialist. Mr. Waller has worked as a police officer, field training officer, detective, sergeant, lieutenant, department training officer, and police chief.  (Defendants' Motion to Bar, Ex. A – Waller Report at 1; Plaintiff's Response ¶ 1).  He holds a Bachelor of Science degree in police administration and a Master of Science degree in public administration.  He has been certified as a police training instructor in four states and has served as the director of a regional police training academy.  He has trained and taught others in police-citizen interaction, use of force, criminal and internal investigations, and police ethics. Mr. Waller has been trained as an assessor for the Commission on Accreditation for Law Enforcement Agencies, and says he is "Certified Legal Investigator."  (*Id.*).

Based on the "totality of [his] training, education, and experience in law enforcement," Mr. Waller has provided opinions that fall into three main categories:  (1) opinions evaluating the practices of the Chicago Police Department in investigating the incident and opinions concerning the quality of the independent investigation performed by the Independent Police Review Authority ("IPRA"); (2) opinions that the shooting did not occur in the manner described in the police reports that the IPRA relied upon in its investigation; (3) opinions that there was "no lawful basis for Officer Duran to use deadly force by shooting Tyrone."

The defendants contend, in essence, that Mr. Waller's opinions are irrelevant, beyond his competence, and would not be helpful to the jury. The plaintiff, not

---

[1] A more detailed factual background of the case may be found in *Davis.*

surprisingly, disagrees, although that disagreement is in a form so sketchy, undeveloped, and conclusory as to warrant invocation of the waiver doctrine. *See infra* at 8.

## ANALYSIS

### 1.

### Expert Testimony and Rule 702

One of the historic concerns with expert witnesses is that they are all too often "the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit," and "there is hardly anything, not palpably absurd on its face that cannot now be proved by some so-called experts." *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,* 797 F.2d 370, 382 (7th Cir. 1986) (Posner, J.). Judge Posner is not the first to have expressed concern about the willingness of experts to slant their testimony.

In his now famous speech in 1921 to the Bar Association of the City of New York, which he titled "The Deficiencies of Trials to Reach the Heart of the Matter," Learned Hand said that the expert "inevitably or nearly, must take on the attitude of a partisan, for partisan they surely become." A year earlier, the Illinois Supreme Court lamented that expert testimony is "regarded as the most unsatisfactory part of judicial administration... because the expert is often the hired partisan...." *Opp v. Pryor*, 294 Ill. 538, 128 N.E. 580, 583 (1920). More recently, Judge Weinstein has observed that "an expert can be found to testify to the truth to almost any factual theory, no matter how frivolous." Weinstein, *Improving Expert Testimony*, 20 U.Rich.L.Rev. 473, 482 (1986). And noted scholars have expressed the same concerns. *See* Michael H. Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Assurance of*

*Trustworthiness* (1986) Ill.L.Rev. 43, 45 ("Today practicing lawyers can locate quickly and easily an expert witness to advocate nearly anything the lawyers desire."); 29 Wright and Gold, Federal Practice and Procedure, § 6262 at 183 (1997).

Thus, courts are not allowed to "take ... on faith" whatever a paid expert claims, *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997), no matter how distinguished his credentials. *Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 319 (7th Cir. 1996). Federal trial judges have an independent obligation—a gatekeeping or screening function—to insure that proffered scientific evidence rests on a reliable foundation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 589, 597 (1993).[2] The insistence on reliability helps to ensure the integrity of the judicial process, *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir. 1989), and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert. O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1094 (7th Cir. 1994).

Consistent with the generally inclusionary and expansive thrust of the Federal Rules of Evidence, *Tome v. United States,* 513 U.S. 150 (1995); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993), "the rule on expert testimony [is] notably liberal…." *Krist v. Eli Lilly & Co.,* 897 F.2d 293, 298 (7th Cir. 1990). Absent strong factors favoring exclusion, "[d]oubts regarding whether an expert's testimony will

---

[2] While discussing several factors which "bear upon the [reliability] inquiry," the Court emphasized that the inquiry is "a flexible one," and that it was "not presum[ing] to set out a definitive checklist or test." The focus is not on the expert's conclusions, but on the underlying methodology. *Id.* at 593–595. To be admissible, scientific evidence must supported by "appropriate validation." *Id.* at 590. They were: (1) whether a theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation. Although rejecting "general acceptance" as the exclusive test for admissibility, the Court noted that it could be an additional factor that might bear on reliability. 509 U.S. at 593–94.

be useful should generally be resolved in favor of admissibility." *United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011). *See also* 3 J. Weinstein and M. Burger, Weinstein's Evidence, ¶ 702[02] (1996). The Supreme Court in *Daubert* reaffirmed the importance of the adversary system, "which is fundamental to Anglo–American jurisprudence," *United States v. O'Neill,* 437 F.3d 654, 660 (7th Cir. 2006), and the capability of juries to understand scientific evidence and weigh the credibility of the competing experts, notwithstanding their contradictory conclusions and "dogmatic assertions." *Railroad Commission of Texas v. Rowan & Nichols Oil Co.,* 310 U.S. 573, 583 (1940). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 Advisory Committee's Note. Vigorous cross examination, presentation of contrary evidence and careful jury instructions, *Daubert* stressed, are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert,* 509 U.S. at 596. *Accord Walker v. Soo Line R. Co.,* 208 F.3d 581, 587 (7th Cir. 2000); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718–719 (7th Cir. 2000).[3]

Nonetheless, like all evidence, expert testimony must be relevant to be admissible. *Daubert,* 509 U.S. at 589, 597. If it does not relate to an issue in the case, it is "not relevant and, ergo, non-helpful." *Id. See also* 3 Weinstein & Berger ¶ 702 [02], p. 702–18); *United States v. Gallardo,* 797 F.3d 727, 733 (7th Cir.2007) (expert testimony must be "factually linked to the case in order to meet Rule 702's 'helpfulness'

---

[3] The flexibility of the inquiry envisioned by Rule 702, the illustrative nature of the *Daubert* factors, and the considerable leeway a trial judge must have in deciding whether expert testimony is reliable, were dominant themes of *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). There, the Court held that the basic gatekeeping obligation created in *Daubert* applies equally to testimony based on technical and other specialized knowledge, *id.* at 141, 147–49, and it recognized that there are many different kinds of experts and many different kinds of expertise. *Id.* at 150.

requirement"). Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 702; *Lawson v. Trowbridge,* 153 F.3d 368, 375 (7th Cir. 1998). To be helpful, the testimony must concern a matter beyond the understanding of the average person. *See United States v. Allen,* 390 F.3d 944, 949–950 (7th Cir.2004); *United States v. Mansoori,* 304 F.3d 635, 653–654 (7th Cir.2002); *United States v. Young,* 316 F.3d 649, 656–659 (7th Cir. 2002). Since an "'opinion has a significance proportioned to the sources that sustain it,'" *Huey v. United Parcel Service, Inc.,* 165 F.3d 1084, 1087 (7th Cir.1999), an expert who provides nothing but a bottom line supplies nothing of value to the judicial process. *Minasian,* 109 F.3d at 1216.

## 2.

## Mr. Waller's Proposed Testimony

In the instant case, Mr. Waller opines about the adequacy and sincerity of the post-shooting investigation – which was not conducted by the defendants – and which is irrelevant to the question of the officer's perception of the events that confronted him at the time of the shooting. He resolves factual issues in deposition testimony of witnesses by analyzing supposed inconsistencies even though that task rests exclusively with the jury. This analysis underlies his conclusion that the shooting could not have occurred as the defendants contend. Mr. Waller attempts to give opinions on bullet trajectory and conclusions to be drawn from that trajectory, even though he has no training or experience in that field or in medical forensics or pathology. He has even gone so far as to give an opinion on the "ethical and moral" obligations of the responding police officer's partner to give truthful testimony regarding the shooting and the legal obligation of the officer to have intervened in the shooting.

Mr. Waller's opinions in this case are either irrelevant, go beyond his expertise, are conclusory, or would not be helpful to the jury. The same kind of testimony sought to be admitted here has been rejected when offered by Mr. Waller in other cases. It is not without significance that the plaintiff has made no meaningful attempt to support the proposed testimony. The sum total of what effort has been made is contained in a three-page Response brief, which does not contain a single case citation and which devotes perhaps a paragraph to each of the plaintiff's objections. It consists largely of partisan assertions that the defendants are wrong and that the evidence *is* relevant, competent, and admissible. "[U]nfortunately for [the plaintiff], saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010).

By failing to explain and support the plaintiff's contentions, the Response brief runs afoul of the Seventh Circuit's repeated warnings that skeletal, perfunctory, and unsupported arguments are waived. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 624-625 (7th Cir. 2010). *See also B.H. v. Joliet School Dist. 86*, 2009 WL 1269256 (N.D.Ill. 2009)(Norgle, J.); *Chapman v. University of Chicago Hospitals*, 2005 WL 936591 (N.D.Ill. 2005)(Norgle, J.).[4] In short, the plaintiff has waived the argument that Mr. Waller's testimony should not be barred. "'[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006).[5]

---

[4] The Seventh Circuit's refusal to condone the kind of skeletal and unsupported briefing exemplified by the Response brief and to impose consequences could not be more emphatic or consistent. *See e.g., Long v. Teachers' Ret. Sys. of Ill.,* 585 F.3d 344, 349 (7th Cir. 2009); *Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 789 (7th Cir. 2007); *Hach Co. v. Hakudo Co., Ltd.*, _F.Supp.2d_, 2011 WL 1113417, 9 (N.D.Ill. 2011)(collecting cases).

[5] The defendants' supporting brief is not much better. It is six pages and cites only *Daubert*. But it does attempt a more thorough analysis and contains developed arguments. Nonetheless, the kind of

(continued...)

Quite apart from considerations of waiver, the plaintiff's Response brief is singularly unpersuasive. Our discussion begins with the principles governing admissibility of expert testimony under Rule 702, Federal Rules of Evidence.

**a.**

### Mr. Waller's Opinions As To The Practices of the Chicago Police Department And The Quality of the Investigation

The bulk of Mr. Waller's expert report contains opinions expressing his disapproval concerning post-shooting incident investigatory practices of the Chicago Police Department and the quality of the independent IPRA investigation. Waller states in sections A, B, D(4) and E of his report that:

A.　　The purpose of any investigation is to determine the truth about what happened. The Chicago Police Department made no objective, comprehensive, documented attempt to determine the truth about what happened consistent with nationally accepted standards of police practice.

B.　　The actual practice of the Chicago Police Department, as evidenced by the manner in which the case was handled, tends to conceal officer misconduct and discourage independent examination.

D(4).　　A diligent and conscientious effort to objectively determine the truth of this matter has not been made by the Chicago Police Department or the IPRA.

---

[5](...continued)

briefing from both sides is of little help to a court. This is not a problem unique to this case. Two distinguished members of this court have commented negatively on the quality of the briefs that they have seen. Robert W. Gettleman, *We Can Do Better,* 25 LITIGATION 3 (Summer 1999); Matthew F. Kennelly, *From Lawyer To Judge,* 2001 LITIGATION 3 (Summer 2001). But the fact remains that the adversary systems depends on comprehensive presentations from both sides. *United States v. Conic,* 466 U.S. 648, 655 (1984); *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir. 1992). Where that is wanting, the court's work is increased exponentially and needlessly. Given the importance of the issue under consideration, the abbreviated presentations are surprising. As the title of Judge Gettleman's article says, "we can do better."

E.     The actions of the Chicago Police Department and IPRA in this matter are consistent with the long established practice of the City of Chicago of shielding Chicago Police personnel from external examination of their actions. The failure of the Chicago Police Department and IPRA to adequately and accurately conduct a comprehensive investigation is consistent with the City's practice of protecting the involved officers from accountability and the City of Chicago from liability.

(Defs. Motion, Ex. A – Waller Report at 4-7, 11).

The defendants seek to bar these opinions on grounds that they are irrelevant and therefore do not meet the helpfulness standard for expert testimony under Rule 702. (Defs. Motion at 2-3). *See also* Fed. R. Evid. 402 (irrelevant evidence is inadmissible). The quality of the Chicago Police Department and IPRA investigations is not an issue in the case, and Mr. Waller's opinions have no bearing on the main inquiry, which is the reasonableness of Officer Duran's use of force under the circumstances that presented themselves to him at the time of the shooting. Waller's opinion – which is unsupported by any facts or any specifics as to what should have been done that was not -- that the police department and IPRA failed to "adequately and accurately conduct a comprehensive investigation" does not elucidate what occurred when the officers arrived at the scene and the reasonableness of their perceptions at the time. The subsequent investigation of the shooting manifestly could not have played any role in the officer's decision to shoot the decedent and will impermissibly deflect the jury's attention from the critical issue in the case.

The plaintiff seems to suggest that Mr. Waller's opinion should be allowed because he has expertise in use of force and internal police procedures for investigation. He may well have. But an impressive resume is not a guarantor of relevancy. The expert's opinion must "fit" the case, and his *ipse dixit* that it does is never enough.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Stephen Hawking would be a stunning witness in a case involving theoretical physics, but would never see the light of day in an accounting malpractice case.

The plaintiff's three-page, unsupported Response brief concludes that Mr. Waller's opinions on the "inaccurate report as to the manner in which… [the] shooting occurred" are "certainly relevant, in that [they tend] to make it more probable that the shooting occurred as testified to by the witnesses other than Officer Duran (i.e., in a way that involved misconduct which would benefit for concealment)." (Response ¶ 3) (parenthesis in original). The contention might have some arguable merit if Duran was responsible for the investigation and if Waller's opinion was anything other than a series of unexplained conclusions. For then it might be argued that the faulty investigation was designed to "cover-up" what actually occurred and thus could be circumstantial evidence of consciousness of guilt. But those are not the facts of the case.

At best, the claimed inadequate, inaccurate, and "[in]sincere" post-shooting investigation, (Response ¶ 3), could do no more than raise the speculative possibility that the investigators thought there was something that needed covering up. But, "hypothesis is not proof," *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005), nor is speculation. *In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007); *United States v. Landry,* 257 F.2d 425,431 (7th Cir. 1958). And whether another police officer thought there was something to cover up does not tend to prove either that there was something that needed to be whitewashed or that the investigating officer's assumption in that regard was more likely true than not.

Of course, Mr. Waller could not, in any circumstances, testify to the motivation of the investigators. *See DePaepe v. GMC,* 141 F.3d 715, 720 (7th Cir.1998)(an engineering expert could testify that a certain type of padding could save money, or that the company's explanation for using that padding was not sound, but could not testify that the defendant's motive was to save money). "[J]udges have no way of crawling into peoples' minds," Posner, Overcoming Law, 276 (1995), and neither do experts. Yet, that is precisely what Mr. Waller is attempting to do in opining that the deficiencies in the investigation were pursuant to the Police Department's "practice of protecting the involved officers from accountability and the City of Chicago from liability." (Defs. Ex. A, Waller Report at 6). Mr. Waller's attempts at divining motivation have been held improper even where the defendant was the investigator. *See e.g., Cvicker v. Meyer*, 2008 WL 927574, 7-8 (E.D. Wis. 2008). They will not be allowed here.

There is an additional reason for exclusion of Mr. Waller's opinions about the investigation. Because "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it,' 'the judge in weighing possible prejudice against probative force under Rule 403 … exercises more control over experts than over lay witnesses.'" *Daubert,* 509 U.S. at 595. These are matters committed to the broad discretion of the district court and, being context-specific, are generally not amenable to broad *per se* rules. *Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 387 (2008).

That Rule provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

or needless presentation of cumulative evidence." If allowed, Mr. Waller's testimony would hopelessly and irretrievably deflect the jury's attention from the pivotal question of whether Officer Duran acted appropriately given the circumstances with which he was confronted to the irrelevant inquiry of the adequacy of the post-shooting investigation. And that in turn would lead to an exploration of the reasons for the perceived deficiencies: did they stem from some illicit design on the part of the investigators, as Waller asserts, or were they the result of mistake or inattention to detail. In the words of Rule 403, Mr. Waller's opinions on the post-shooting investigation would pose a significant and unacceptable danger of confusion of the issues and misleading the jury, the very things Rule 403 seeks to prevent. It is hard to imagine a situation more appropriate to the application of the Rule than that presented here.

**b.**
**Mr. Waller's Opinions That The Shooting Did Not Occur In the Manner Described In The Police Reports That The IPRA Relied Upon In Its Investigation**

Part C of Mr. Waller's report sets forth his opinion that "[b]ased on the sworn testimony of the officers and witnesses, this officer-involved shooting did *not* take place in the manner described in the [Chicago Police Department] reports, which served as the basis for determining the shooting was justifiable and that no independent IPRA investigation was necessary." (Defs. Ex. A – Waller Report at 7)(emphasis in original). There are five sub-parts that follow the opinion, each of which notes differences between statements from the police and IPRA reports and statements made at depositions taken in the case. Here is an example:

> C(3). The police report attributes Curtis Dandridge as saying when he released Tyrone, Tyrone stabbed him in the back. *Tyrone stabbed*

> *him again and was attempting to stab him more when the officers*
> *shot Tyrone*.  Also according to the report, Curtis gave this same
> version to the IPRA.
>
> a.   According to the IPRA statement, Tyrone had *stabbed*
>      *Curtis in the back with a piece of glass two times prior to*
>      *the arrival of the officers*.  When Curtis released Tyrone at
>      the command of the officers, Tyrone attempted to stab
>      Curtis a third time.  Tyrone was shot and Curtis felt his
>      body go limp.
>
>      1)   Curtis [deposition, p. 142] did not read the IPRA
>           statement before he signed it.  I had no opportunity
>           to read my IPRA statement [p. 149] before signing
>           it.
>
>      2)   From the way he was holding Tyrone [p. 141],
>           Tyrone could not have stabbed him.
>
>      3)   I told the IPRA [p. 143] that I told the officer that
>           Tyrone stabbed me.  I never told the officer that
>           Tyrone stabbed me two times.

(*Id.* at 8) (emphasis in original).

The trouble with Mr. Waller's opinions, as the defendants contend, is that they merely note conflicting testimony and purport to weigh factual disputes that the jury needs no assistance in resolving.  It is a fundamental premise of our trial system that "determining the weight and credibility of witness testimony…'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'"  *United States v. Scheffer*, 523 U.S. 303, 313 (1998). "[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009). *See also United States v. Garcia*, 413 F.3d 201, 215 (2nd Cir. 2005).

It is this premise that underlies the principle that expert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those

inconsistencies. That is the role of the lawyer, and it for the jury to draw its own conclusions from the testimony it hears. It is simply not Mr. Waller's place to point out inconsistencies between the police report and the deposition testimony as he seeks to do here, and his evaluation of claimed inconsistencies will not be helpful to the jury. Finally, his report points to no proper scientific or experience-based method by which he has arrived at his conclusion that the shooting "did not take place in the manner described" in the police reports. (Defs. Ex. A – Waller Report at 7).

The plaintiff argues that Mr. Waller is not simply "weighing in on conflicting testimony," but rather is applying his "training in police practices, use of force, and investigations" to conclude that the police report was inaccurate in its description of the manner in which the shooting occurred. (Response ¶ 4-5). This opinion, the plaintiff contends, "makes it more probable that the shooting occurred in a manner which the [Chicago Police Department] saw fit to misrepresent, which under the circumstances would denote the use of excessive force." (*Id.*). This is a non-starter; it merely substitutes the *ipse dixit* of counsel for the *ipse dixit* of the expert. It rests, as it must, on a determination of who Mr. Waller believes. A previous attempt by Mr. Waller to opine that the defendant's shooting amounted to excessive force was rejected in *McBroom v. Payne*, 2011 WL 1356925, 3 (S.D.Miss. 2011). *Cf.*, *Hygh v. Jacobs,* 961 F.2d 359, 364 (2d Cir. 1992)(expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances" and was "totally improper" held inadmissible).

Finally, Mr. Waller's comparisons between the police report and the deposition testimony simply revisits, although in slightly different language, the manner in which

the Chicago Police Department handled investigation of the incident post-shooting. But since that issue is irrelevant to the reasonableness of Officer Duran's use of force at the time of the occurrence, the opinion that relies on it is equally irrelevant.

<b>c.</b><br>
<b>Mr. Waller's Opinions That There Was "No Lawful Basis" For Officer Duran To Use Deadly Force Against Tyrone</b>

In section D of his report, Mr. Waller opines that "[a]ssuming, as Curtis and the two witness [sic] have testified, that Tyrone was being held by Curtis on the couch in a manner in which he could not move at the time Tyrone was shot, then there was *no* lawful basis for Officer Duran to utilize deadly force by shooting Tyrone." (Defs. Ex. A – Waller Report at 10)(emphasis in original). The opinion is grounded in four subparts: (1) that if Tyrone did not pose an immediate threat to Officer Duran, shooting him was "excessive and unnecessary force"; (2) that the pathway of the bullet track was consistent with Tyrone being restrained in a bear hug by Curtis at the time he was shot; (3) that Officer Kolodziejski should have attempted to stop Officer Duran from shooting Tyrone; (4) that there was no diligent effort made by either the Chicago Police Department or the IPRA to determine "the truth" about the incident. The defendants object to section D of Mr. Waller's report on several grounds. Each section subpart is addressed in turn.

In Subpart 1, Mr. Waller states that "if Tyrone was in a position where he did *not* pose an immediate threat of death or serious bodily injury to Curtis, to Officer Duran, or to another person, than [sic] shooting him was excessive and unnecessary force." (*Id.*) (emphasis in original). Waller also notes that Officer Duran's use of force "would also be indicative of a criminal act." (*Id.*). These statements, as the defendants contend, are inadmissible under Rule 702 because they are simply characterizations of law, which do

nothing more than purport to instruct the jury as to the proper standard for reasonableness in use of force cases. They effectively parrot, in slightly different language, the Seventh Circuit pattern jury instruction on reasonableness in use of force cases. *See* Instr. 7.09 ("An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm"). Mr. Waller's proposed testimony about the concept of "scope of employment" was rejected as an attempt to explain the meaning of legal concepts not long ago in *Hallett v. Richmond,* 2009 WL 5125628, 6 (N.D.Ill. 2009).

The plaintiff's position is that since evidence concerning the use of deadly force is relevant, and because Mr. Waller is an expert in the use of force, he is qualified to give the opinion. But, Mr. Waller's opinion would not be helpful, since under the Federal Rules of Evidence, it is the role of the judge, not the witness, to instruct the jury on the applicable principles of law. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 n.6 (7th Cir. 1981). "Expert testimony that usurp[s]…the role of the trial judge in instructing the jury as to the applicable law…by definition does not aid the jury in making a decision; rather it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005). *See also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *Specht v. Jensen*, 853, F.2d 805 (10th Cir. 1988), *cert. denied*, 488 U.S. 1008 (1989) ("expert" lawyer's testimony as to whether defendants' conduct involved a "search" within the meaning of the Fourth Amendment, and whether the "search" was consensual was inadmissible because it supplanted roles of judge and jury).

Subpart 2 states:

> The autopsy report from the Medical Examiner, Dr. Nancy Jones, indicated the path of the bullet in Tyrone's back was from left to right, back to front, and upward. Tyrone was 6'2'' tall. Officer Duran is approximately 5'7'' tall. The pathway of the bullet track is consistent with Tyrone being restrained in a bear hug by Curtis at the time he was shot.

(Defs. Ex. A – Waller Report at 10). The trouble with these statements, as the defendants contend, is that they are conclusory and lack any basis beyond a mere recitation of medical examiner's autopsy findings. (*See* Defs. Motion at 6; Defs. Reply at 3). Indeed, Mr. Waller provides no proper explanatory reasoning for how he reached the conclusion that the bullet trajectory was consistent with Tyrone being restrained in a bear hug at the time of the shooting. And expert opinions that merely set forth conclusions, but without any basis or reasonable analysis, are of no assistance to a jury. *Minasian,* 109 F.3d at 1216 (affirming the district court's exclusion of an expert's affidavit that was "devoid of analysis").

Mr. Waller is unqualified to testify about bullet wound trajectories. When questioned at his deposition about the basis for his opinion that the bullet path was consistent with Tyrone being held in a bear hug at the time of the shooting, Waller repeatedly retreated behind the unhelpful and protective formulaic response that he was "relying on the totality of [his] training, education, and experience." (Defs. Ex. B – Waller Deposition at 30, 31, 35, 37). Quite apart from the unacceptability of that short of a response – which, if sufficient, would make all expert testimony essentially impervious to challenge and to meaningful cross-examination -- Mr. Waller's background is in police practice and procedures, not ballistics. He has no training or experience in forensic medicine or pathology, (*id*. at 32), and thus is not qualified to offer an opinion on the

subject or anything else that is dependent on that expertise. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004)(expert must be qualified in the relevant field).[6]

Mr. Waller apparently reached the conclusion that Curtis was holding Tyrone in a bear hug at the time of the shooting by simply cobbling together testimony from the medical examiner's deposition and selected eyewitness testimony describing Tyrone's position when Officer Duran shot him. (*Id.* at 5-7). That opinion is not the product of any expertise at all – any juror could just as easily have drawn the same conclusion after hearing the selected testimony presented at trial – and that is the task that the jury will be asked to perform. Like his opinions comparing the police report with deposition transcripts (discussed above), the testimony would not assist the jury.

The Response brief does not effectively meet the defendants' challenges to Mr. Waller's statement either on this or any other issue. Instead, it contents itself with saying that Mr. Waller "is not actually giving the opinion regarding the bullet trajectory here," but rather, is "using the evidence of the bullet track provided by other witnesses to arrive at his opinion that there was no lawful basis for the use of force in question." (Response ¶ 6). Testimony from an expert that "the pathway of the bullet is consistent with Tyrone being restrained in a bear hug at the time he was shot," is quite clearly a statement of opinion about bullet-trajectory.

The fact that Mr. Waller is using the statement as a basis for his opinion that Officer Duran used unreasonable force is analytically irrelevant. His conclusion in the latter regard that the defendant used unreasonable force is not helpful to the jury and is

---

[6] When asked at his deposition about his training in ballistics and whether his opinions in this regard had ever been challenged in other cases, Mr. Waller characterized the question as "ludicrous." (Defs. Ex. B– Waller Report at 35).

inadmissible.  He is simply telling the jury how to decide the case, and that he cannot do.

*Hygh*, 961 F.2d at 364.  He has been precluded from giving such testimony in *McBroom*,

where the district court prohibited him from testifying that the shooting constituted

excessive force: "Whether or not force is excessive or reasonable is a legal conclusion,

and therefore constitutes inadmissible opinion..... Such an opinion would not have been

helpful to the jury."  2011 WL 1356925, 3.

In varying contexts, expert testimony, like that sought to be admitted here, has

been held to constitute an impermissible legal conclusion or to be otherwise unhelpful to

the jury.[7]  In *Hallett v. Richmond*, 2009 WL 5125628, 1-2 (N.D. Ill. 2009), Judge Kapala

noted that the Seventh Circuit has made clear that questions of law should be resolved by

the court and are not appropriate subject of expert testimony.  Consequently, he held that

Mr. Waller's proposed testimony on the issue of reasonableness of the force defendants

used on plaintiff was inadmissible.  *See also Ingram v. Pavlak*, 2004 WL 1242761, 5 n.3

(D. Minn. 2004)(proposed testimony by Mr. Waller like that offered here held

inadmissible); *Egebergh v. Village of Mount Prospect*, 2004 WL 856437, 3 (N.D. Ill.

2004)(Mr. Waller not allowed to testify that defendant's actions constituted deliberate

---

[7]  *See, e.g., United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)(improper to admit testimony of expert who opined on the reasonableness of officers' conduct under Fourth Amendment standards); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)(reasonableness and foreseeability of plaintiff's reliance inappropriate subjects for expert testimony). *Hygh v. Jacobs*, 961 F.2d 359, 364 (2nd Cir. 1992)(disallowing expert's conclusions that an officer's conduct was not "justified or warranted under the circumstances" and was "totally improper"); *Strong v. E.I. Dupont De Nemours Co.*, 667 F.2d 682, 686 (8th Cir. 1981)(Question whether product was "unreasonably dangerous" for jury not expert); *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)(same); *Hutchison v. Cutliffe*, 344 F.Supp.2d 219, 222 (D.Me. 2004)(witness should not be allowed to opine about the reasonableness of the degree of force applied because once a jury decides which set of facts it believes, it will be within their ability to decide whether the use of force was reasonable or not); *Giles v. Rhodes*, 2000 WL 1425046 at *18 (witness may not testify as to the reasonableness or propriety of the defendants' actions); *Watkins v. New Castle County*, 374 F.Supp.2d 379, 393 (D.Del. 2005)(expert not allowed to testify that the conduct of the officers was unreasonable, reckless, willful, and violated the plaintiff's constitutional rights).

indifference, that being a question for the jury alone. The court held it was improper for him to compare the defendant's conduct with known standards because it may have confused the jury and thus was properly excluded under Rule 403).

In Subpart 3, Mr. Waller asserts that Officer Kolodziejski "should have attempted to stop Officer Duran from shooting if he was in a position to do so." (Defs. Ex. A – Waller Report at 11). He goes on to note that "Officer Koloziejski also had a moral and ethical obligation to testify honestly and accurately about what happened," thereby implying he lied. (*Id.*). Quite apart from the fact that the plaintiff dismissed the "failure to intervene" claim against Officer Koloziejski on December 14, 2010 [Dkt. # 64], Mr. Waller's implied credibility determination is improper and is moreover undeveloped. It has no discernable relevance to his inadmissible opinion that there was no lawful basis for Officer Duran's use of force. *See Harris v. Clark*, 2009 WL 1683233, 3 (E.D. Wis. 2009)(Mr. Waller's testimony regarding officer's purported failure to intervene, the credibility of witnesses, and the proximate cause of plaintiff's injuries disallowed).

Likewise, Waller's opinions about Officer Kolodziejski's moral and ethical obligations are irrelevant and inadmissible. The plaintiff has dismissed the failure to intervene count, and Mr. Waller's subjective notions of morality have no role to play in this or any other case. Conceptions about ethics and morality quite properly play a significant role in the legislative process. They play none in the actual trial of a §1983 case, which is governed by specific legal principles as defined by the court in its jury instructions. *Compare United Draperies, Inc. v. Commissioner of Internal Revenue*, 340 F.2d 936, 938 (7th Cir. 1964)("In reaching this conclusion we do so apart from

consideration of the morality…of the practice"). Justice Holmes' explanation in The Common Law puts the matter in proper perspective:

> Notwithstanding the fact that the grounds of legality liability are moral to the extent above explained, it must be borne in mind that law only works within the sphere of the senses. If the external phenomena, the manifest acts and omissions, are such as it requires, it is wholly indifferent to the internal phenomena of conscience. A man may have as bad a heart as he chooses, if his conduct is within the rules. In other words, the standards of the law are external standards, and, however much it may take moral considerations into account, it does so only for the purpose of drawing a line between such bodily motions and rests as it permits, and such as it does not. What the law really forbids, and the only thing it forbids, is the act on the wrong side of the line, be that act blameworthy or otherwise.

> Oliver Wendell Holmes, The Common Law 88 (Howe ed. 1963).

Subpart 4 of this section of the Waller report brings us full circle by returning to Waller's condemnation of the quality of the post-shooting investigation by the Chicago Police Department and IPRA. He again questions the sincerity of the investigation, stating that, "a diligent and conscientious effort to objectively determine the truth of this matter has not been made by the Chicago Police Department or the IPRA." (Defs. Ex. A – Waller Report at 11). Delving any further into the details of this section is unnecessary since we earlier determined that evidence relating to the quality of the investigation is not relevant.

**CONCLUSION**

The Motion to Bar Expert Opinions of Dennis Waller [Dkt # 93] is GRANTED.

Those opinions of Mr. Waller to which objections have been made will not be allowed at

trial.

ENTERED: _____
United States Magistrate Judge

DATE: 6/10/2011